### Ex PARTE J. M. LESLIE.

No. 5852.    Decided June 9, 1920.

**1.—Tick Eradication Law—Invalidity of Statute.**

Where relator was arrested for violation of Section Fifteen, Chapter Sixty, of the Acts of the Thirty-fifth Legislature, known as the Tick Eradication Law, and claimed that the law was faulty in failing to define the powers conferred upon the Live Stock Sanitary Commission, etc., etc., held: that in conferring upon the Live Stock Sanitary Commission the power to make rules, the non-observance of which constitute a criminal offense, it is deemed necessary that the Legislature define the power. and place limitations upon the authority to promulgate rules to the end that they may not be lacking in the essential elements of law denouncing an offense. Following Railway v. State, 100 Texas, 420, and other cases.

**2.—Same—Rules Stated—Criminal Law—Notice—Due Process of Law.**

A completed law if penal in its effect must define the act or ommission denounced as criminal with some degree of certainty, and due process of law requires that a person be given reasonable notice as a predicate to his punishment for failure to comply with the demands of the authorities. Following Sogdell v. State, 81 Texas Crim. Rep., 66, and other cases.

**3.—Same—Written Notice—Proclamation of Governor.**

The law prescribes that the Live Stock Sanitary Commission shall give notice in writing of the rules promulgated by proclamation issued by the Governor, but it is silent touching the contents of the notice in writing which it requires shall be given, and the procla'mation is likewise silent. It is necessary that it state in specific terms the substance of the notice in which the command was to be couched. and the time after its service within

which the citizen might, by complying with it, avoid a criminal prosecution, and not doing so the law is invalid. Following Railway v. State, 100 Texas, 420.

**4.—Same—Live Stock Sanitary Commission—Delegation of Power—Inspectors.**

The authority to make rules is given by the Legislature to the Live Stock Sanitary Commission, but it is not given authority to transfer this power to its inspector, and the power to arbitrarily discriminate conferred by the Commission upon its agent, in the rule mentioned, does not find support in the Statute upon which the Commission purports to act, and if it were so found, it would be opposed to the fundamental law which forbids the denial to any individual of the equal protection of the law.

**5.—Same—Statutes Construed—Notice—Live Stock Sanitary Commision.**

The said Tick Eradication Law is incomplete in failing to describe with some degree of certainty the rule with reference to notice, which it is intended by the Legislature the Commission is authorized to make, to the end that one accused of its violation may look to the law to determine the authority to make the rule, and the court, in passing upon the reasonableness, may ascertain the Legislative will from the law as written, and the law being silent upon this subject, the relator cannot be punished for refusing to obey the command of the Commission or its agent. Following Jannin v. State, 42 Texas Crim. Rep., 631, and other cases.

Appeal from the County Court of Milam. Tried below before the Honorable W. G. Gillis.

Appeal from Habeas Corpus proceeding, refusing to discharge relator.

The opinion states the case.

*W. A. Morrison* and *Robert M. Lyles,* for relator.—On question of invalidity of statute: M. K. & T. Ry. Co. v. State, 100 Texas, 420; State v. Texas Railway Co., 103 S. W. Rep., 653; Hutcheson v. Starry, 92 Texas, 689; Jannin v. State, 62 S. W. Rep., 419; Ex parte Coombs, 38 Texas Crim. Rep., 659; Ex parte Adlof, 215 S. W. Rep., 222.

On question of delegation of Legislative power by commission. Ry. Co. v. Commission, 169 S. W. Rep., 1039.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

MORROW, Judge.—The relator sought in the County Court of Milam County discharge from custody, and appeals from the order remanding him to the custody of the sheriff. His prosecution is under Section 15 of the Acts of the Thirty-fifth Legislature, Chapter 60, as follows:

"Any person, company, or corporation owning, controlling or caring for any domestic animal or animals, which are located in any territory quarantined through the provisions of this Act, or by the order of the Live Stock Sanitary Commission of Texas, who shall refuse or fail to dip or otherwise treat such live stock at such time

and in such manner as directed in writing by the Live Stock Sanitary Commission, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not less than twenty-five dollars nor more than one hundred dollars, and each day of such failure or refusal shall be a separate offense.''

The complaint charges failure to dip his cattle, and contains the following: ''And that said cattle were then and there located in territory quarantined under the provisions of law by virtue of an order of the Live Stock Sanitary Commission of Texas, as promulgated and proclaimed by Proclamation No. 17 by the Governor of the State of Texas, to-wit, Milam County, Texas; that said Live Stock Sanitary Commission did direct said J. M. Leslie in writing on the 27th day of March A. D. 1920, to dip said cattle on the 29th day of March A. D. 1920, between the hours of seven o'clock a. m. and one o'clock p. m.''

The object of the Act in question is the prevention of disease to cattle, and one of the means recognized therein is the eradication of fever ticks   Power is conferred upon the Live Stock Sanitary Commission of Texas ''to make and promulgate rules and regulations . . . and said Live Stock Sanitary Commission of Texas shall give notice of such rules and regulations by proclamation issued by the Governor of Texas.''

Judicial sanction has often been given to the exercise of the power to, by law, prescribe the punishment for the violation of the regulations of a board or commission, upon the theory that observing proper limitations such an Act is not obnoxious to the principle denying to the Legislature the power to delegate its authority. U. S. v. Grimaud, 220 U. S. Rep., 506, 55 Law Edition, 563; State v. Railway, 32 L. R. A.. New Series, 51; U. S. v. L. & N. Ry., 176 Federal Rep., 942; Whaley v. State, 30 L. R. A., 499; Kansas v. Crawford, 2 A. L. R., 880; Jannin v. State, 42 Texas Crim. Rep., 631, 53 L. R. A., 349; Ruling Case Law, vol. 6, p. 183.   The relator insists, however, that if the soundness of this principle be conceded, the Act in question is faulty in failing to define the powers conferred, and that the rules promulgated are not authorized by the Legislature, and are such as would not be within its power.

The power to make laws is placed by the people through the Constitution upon the Legislature. The rights of individuals are guarded by restrictions touching the enactment and publication of laws, and the privilege is afforded of presenting by petition or appearance before the legislative committees opposition to proposed enactments affecting the property or the liberty of the citizen. A completed law, if penal in its effect, must define the act or omission denounced as criminal with some degree of certainty. Penal Code, sec. 6; Augustine v. State, 41 Texas Crim. Rep., 59; Sogdell v. State, 81 Texas Crim. Rep., 66; Griffin v. State, 86 Texas Crim. Rep., 361, 218 S. W. Rep., 494; Railway v. State, 100 Texas Rep., 420.   And if by

the law one is, as in the present case, commanded to do some affirmative act, due process of law requires that he be given reasonable notice as a predicate to his punishment for failure to comply with the demands. Taylor's Due Process of Law, p. 286, sec. 132; Railway v. State, 100 Texas, 420; Ekern v. McGovern, 46 L. R. A., 841. In conferring upon an instrument of government such as the Live Stock Sanitary Commission the power to make rules, the non-observance of which constitutes a criminal offense, it is deemed necessary that the Legislature define the power and place limitations upon the authority to promulgate rules to the end that they may not be lacking in the essential elements of a law denouncing an offense.

The law prescribes that one who "shall fail to dip or otherwise treat such live stock at such time and in such manner as directed in writing by the Live Stock Sanitary Commission shall be deemed guilty; and says that the Commission shall give notice of the rules promulgated by proclamation issued by the Governor." It is silent touching the contents of the notice in writing which it requires shall be given, and the proclamation is likewise silent. The charge is made in the information that on the 27th day of March the relator was ordered in writing to dip his cattle on the 29th day of the same month, between the hours of seven a. m. and one p. m. The relator was thereby called upon to perform an affirmative act. Neither the time, nor the place, nor the lapse of time after notice being named in the statute nor in the proclamation, they are not fixed by any law, but must rest upon the exercise of the discretion of some individual. The first article of our Penal Code declares: "The design of enacting this code is to define in plain language every offense against the law of this State, and to affix to each offense its proper punishment;" and in Section 3 it is declared: "No person shall be punished for any act or omission unless the same shall be made a penal offense, and a penalty is affixed thereto by the written laws of this State." Assuming that the Legislature might make penal the failure to observe the order of the Commission, it is necessary that it state in specific terms the substance of the notice in which the command was to be couched, and the time after its service within which the citizen might, by complying with it, avoid a criminal prosecution. By the terms of the notice in question in the instant case, the relator was given one day. He was directed to dip his cattle between seven o'clock a. m. and one o'clock p. m. Immediately after one o'clock he, having failed to obey, was the subject of criminal prosecution, not perforce of any law fixing that as the moment of default, nor even of any rule of the Commission. The citizen receiving the notice is furnished no guide by which he may determine that the notice given him is such as the Commission approves, or as the law authorizes. He can look to no provision of the statute nor the proclamation to determine whether the notice is a lawful one, but must at all times be prepared to obey it. No provision is made to accord him the right to a hear-

ing, that he may protest against compliance with the order, or seek its modification. ' The absence of definite provision with reference to the notice, we think brings the law clearly within a class condemned by the Supreme Court of this state in the case of Railway v. State, 100 Texas, 420, in which the question arose upon a statute enacted declaring that each railway corporation operating a railway in this State should maintain at its depots water-closets of certain description, and declaring "any railway corporation which fails, neglects, or refuses to comply with the provisions of this act, shall pay to the State of Texas the sum of $100 for each week it so fails and neglects." The attack upon the validity of this law was sustained by the Supreme Court which expressed itself in part thus:

"It is a well-established principle of statutory construction that penal statutes must be strictly construed in determining the liability of the person upon whom the penalty is imposed, and that the more severe the penalty, and the more disastrous the consequence to the person subjected to the provision of the statute, the more rigid will be the construction of the provisions in favor of such person and against the enforcement of such law. (Suth. Stat. Const., sec. 322, Potter's Dwaris, 244.) A penal statute such as now before us must be couched in such explicit terms that the party upon whom it is to operate may, with reasonable certainty, ascertain what the statute requires to be done, and when it must be done, otherwise there would be no opportunity for a person charged with the duty to protect himself by the performance of it according to the law. (Suth. Stats. Const., sec. 324, Potter's Dwaris, 246-251; Tozer v. United States, 52 Fed. Rep., 917.) In the case last cited Judge Brewer said: 'But, in order to constitute a crime, the act must be one which the party is able to know in advance whether it is criminal or not. The criminality of an act can not depend upon whether a jury may think it reasonable or unreasonable.' " . . .

"There is not a sentence in the law from which the railroad companies of the State could determine the time allowed for the completion of the work required, except under the construction that all must have been completed within one week from July 14, 1905. Surely such a law, if enforced, would take from the railroad company its property, in the penalties exacted by the statute, without due process of law, in violation of the principles of right."

We find in Proclamation No. 17, rules proclaimed containing the following:

"The owners and caretakers of all cattle, in said counties and parts of counties shall dip them regularly under the supervision of an inspector of the Live Stock Sanitary Commission in an arsenical solution . . . *Such dippings shall be given regularly at such intervals and on such dates as may be prescribed by the Live Stock Sanitary Commission or its inspectors; provided, that owners or caretakers may*

*be excused from dipping their cattle, horses, mules and asses when it
is deemed safe or expedient to do so."*

The non-compliance with this rule, we think, cannot be made
criminal. It does not state any dates or intervals when cattle shall
be dipped, and delegates to its inspectors the privilege of determin-
ing such matters. The Live Stock Sanitary Commission is a body
created by the Legislature; its members are officers of the State,
possessing qualifications named by the Legislature, making oath and
bond for the faithful performance of their duty. The authority to
make rules is given by the Legislature to this Commission, but it is
not given authority to transfer the power to its inspectors. The
language in the proclamation clearly discloses that it is contemplated
that both the Commission and its inspectors may exercise arbitrary
authority. "The owners or caretakers," it says, "may be excused
from dipping their cattle when deemed safe and expedient." A rea-
sonable classification and discrimination between classes of individu-
als does not deny the equal protection of the law. Ruling Case Law,
vol. p, p. 378, sec. 372; Cyc., vol. 8, p. 1073. The power to discrimi-
nate embodied in the proclamation is not of this kind. It is required
to rest upon no distinction, but permits those executing it to select,
without giving reasons therefor, those who shall obey it and those who
shall be exempted from its penalty. No condition is named to which
a citizen complaining of discrimination can point as condemning the
action of those executing the law. No fact is named in the law or in
the proclamation which he may establish and urge as a matter of
right as exempting him from the penalty. As written, the time, place,
the reasonableness of the notice, and whether he shall be given the
same privileges as his neighbor who is in the same class, are all matters
within the discretion of the administrative officers. It is the theory
of the statute that when a rule is made and violated a penal offense
has been committed. The power to suspend laws is placed by the
Constitution in the Legislature alone. Constitution, sec. 28, Art. 1.
The power to arbitrarily discriminate conferred by the Commission
upon its agents in the rule mentioned does not find support in the
statute upon which the Commission purports to act, and if it were
so found, it would be opposed to the fundamental law which forbids
the denial to any individual of the equal protection of the law. Rul-
ing Case Law, vol. 6, p. 370; Owens v. State, 53 Texas Crim. Rep.,
105; Ex parte Adlof, 86 Texas Crim. Rep., 13, 215 S. W. Rep.,
222.

The possession by relator of cattle which had not been dipped is
not made by law an offense. It becomes an offense only when a proper
rule made by the Live Stock Sanitary Commission, and promulgated
according to law, has been violated. The law is incomplete in failing
to describe with some degree of certainty the rule with reference to
notice, which it is intended by the Legislature the Commission is au-
thorized to make, to the end that one accused of its violation may

87 Tex.—31

look to the law to determine the authority to make the rule, and the court in passing upon the reasonableness may ascertain the legislative will from the law as written. The law being silent upon this subject, the relator cannot be punished for refusing to obey the command of the Commission or its agents. Power cannot be conferred upon them to make an offense. Jannin v. State, 42 Texas Crim. Rep., 631; Ruling Case Law, vol. 6, p. 181-183. The rule proclaimed by the Commission should designate the time within which an owner would have to comply with an order to dip, and the time thus prescribed should on its face appear reasonable and within the limitations prescribed by the statute. This cannot be left to the arbitrary discretion of the inspectors. There is an absence in the proclamation in question of any limitation touching the notice, save that it be in writing. The rules proclaimed cannot be enforced for the reason that an attempt is made to delegate to the inspectors the discretion conferred by the Legislature upon the Commission, and by reason of the attempt to give a power of discrimination which could not be exercised by the Commission or the Legislature. For these reasons the prosecution, in our opinion, is not founded upon proceedings which authorize the detention and punishment of the relator. His application for writ of *habeas corpus* therefore should have been granted, and his discharge is ordered. It results that the judgment be reversed and the relator released from custody.

*Relator discharged.*