W. M. GODWIN v. THE STATE.

No. 5667.   Decided October 13, 1920.

1.—Tick Eradication—Statement of Facts—Transcript—Practice on Appeal.

To copy a statement of facts in the transcript in misdemeanor cases is the recognized rule of procedure, and the motion to strike out must be overruled. This court has never held that all the provisions of the so-called "stenographers' act" applied to appeals in misdemeanor cases from county courts. Distinguishing Gribble v. State, 85 Texas Crim. Rep., 52.

2.—Same—Quarantine—Live Stock Sanitary Commission—Governor's Proclamation.

Where, defendant was prosecuted for not dipping his cattle, under an election held on the twenty-fifth day of May, 1918, and contended that at the time of the said prosecution there was no sufficient quarantine effective

in the county of the prosecution, in as much as that the Live Stock Sanitary Commission had caused the proclamation to be issued by the Governor before this prosecution was instituted, declaring certain territory therein mentioned to be released from quarantine, which released territory included the county of the prosecution, and the record on appeal showed that the purpose of said proclamation was confined to a release of cattle in the territory mentioned in said proclamation from quarantine only in so far as the same forbade the movement of such cattle, etc., it did not include such territory as was placed under local quarantine before the time of said prosecution; however, as the law at the time of this prosecution, with reference to issuing notice, has been held to be too indefinite to be effective, the prosecution must be dismissed. Following Ex parte Leslie, recently decided.

Appeal from the County Court of Coleman. Tried below before the Honorable L. G. Mathews.

Appeal from a conviction of violation of the Tick Eradication Law; penalty, a fine of twenty-five dollars.

The opinion states the case.

*Baker & Weatherred,* for appellant.

*Alvin M. Owsley,* Assistant Attorney General, *T. H. Strong,* County Attorney, and *Critz & Woodward,* for the State.—On question of striking out statement of facts: Wales v. State, 212 S. W. Rep., 503.

LATTIMORE, JUDGE.—Appellant was convicted of violating the Tick Eradication Law, and punished by a fine of $25, from which conviction he brings this appeal.

The State has filed a motion to strike out the statement of facts herein, for the reason that same is incorporated in the transcript. which motion is overruled. Copying the statement of facts in the transcript has been the recognized procedure in misdemeanor cases. This Court has never held that all the provisions of the so-called "Stenographers' Act" apply to appeals in misdemeanor cases from county courts. Nor does the opinion in the Gribble case, 85 Texas Crim. Rep., 52, 210 S. W. Rep., 215, so announce. We there simply construed Article 845, Vernon's C. C. P., as applicable to the time of filing statements of facts and bills of exceptions in misdemeanor appeals from County Courts.

It appears from the record that at an election held on May 25, 1918, in Coleman County, Texas, a majority of the votes cast were in favor of tick eradication, and that the statutory steps necessary to make said law effective were taken. On August 26, 1919, a complaint was filed against appellant, charging that on or about May 2, 1919, he was the owner and care-taker of certain livestock there situated, and that he refused to dip the same, after having been notified, etc., said complaint being substantially in the form outlined by us in the Emberline case, 85 Texas Crim. Rep., 399, 212 S. W. Rep., 955. Upon information duly based on said complaint, a trial was had, resulting as stated.

It is urged by appellant, that at the time of said prosecution and trial, there was no sufficient quarantine effective in Coleman County, inasmuch as, according to his claim, the Livestock Sanitary Commission of Texas, had caused a proclamation to be issued by the Governor of this State on December 6, 1918, declaring certain territory therein mentioned, to be released from quarantine, which released territory included Coleman County. In support of this contention, we are presented with Supplemental Proclamation No. 12, by the Governor, the applicable part of which is as follows:

"Whereas, The Bureau of Animal Industry, United States Department of Agriculture, has released from the fever tick quarantine all the counties and parts of counties hereinafter mentioned, effective December 1, 1918, the Live Stock Sanitary Commission of Texas has released all the premises, cattle, horses, mules and asses in said territory from quarantine, except such premises, cattle, horses, mules and asses as are placed under local quarantine by the Live Stock Sanitary Commission of Texas on and after December 1, 1918

Now therefore, I, W. P. Hobby, Governor of the State of Texas, by virtue of authority vested in me as Governor by the laws of the State of Texas, do hereby proclaim the following quarantine release and rules and regulations of the Live Stock Sanitary Commission to be in effect on and after December 1, 1918; said quarantine release and rules and regulations having been regularly adopted by the Live Stock Sanitary Commission of Texas, to be in effect on and after said date.

1. All cattle, horses, mules and asses located on said released premises are hereby granted free and unrestricted movement, and may be driven or shipped to any point in the Free Area without inspection; provided, they can reach point of destination without being exposed to tick fever infection.

2. Cattle, horses, mules and asses mentioned in the paragraph next preceding must be loaded through clean pens, if they are to be shipped as native (non-infectious) cattle, horses, mules and asses to points in the Free Area. Work stock are not subject to this restriction, but may be moved after exposure, the same as if they were non-exposed.

3. All premises under special quarantine on and after December 1, 1918, in said territory are subject to all the rules and regulations of the Live Stock Sanitary Commission, governing the enforcement of such quarantines, and are subject to all the rules and regulations of the Live Stock Sanitary Commission that were in force before the issuance of this release.

4. All public shipping pens in said territory that are not placed under special quarantine on and after December 1, 1918, are hereby released from quarantine, and native cattle, horses, mules and asses may be loaded and unloaded through same without restriction. An

order of the Live Stock Sanitary Commission of Texas, effective December 1, 1918, will be issued containing a list of all pens under special quarantine in said territory.

5.  The territory hereinbefore referred to is composed of the following counties and parts of counties, and is hereby declared to be a part of the Free Area: Bosque, Callahan, Coleman," etc.

This proclamation, upon its face, would seem to release all premises, in Coleman County, from quarantine, except those which might be placed under local quarantine by the Live Stock Sanitary Commission on and after December 1, 1918; but the question arises as to the power and right of said Commission to make rules and regulations releasing from quarantine cattle, etc., in territory which, by a local option election, has voted to take up the work of tick eradication. If this right and power existed, then it seems to us that the contention of appellant must be upheld, in the absence of a showing that a local quarantine was declared upon his premises and live stock by said Commission, or that in proper manner the release of said county contained in supplemental proclamation No. 12 had been annulled after December 1, 1918, which local quarantine he had violated. Section 7, of Chapter 60, of the Acts of the Regular Session of the Legislature of 1917, which Act is known as the "Tick Eradication Law," reads as follows:

*Section 7.* It shall be the duty of the commissioners courts of any county within the State of Texas, whenever they deem it expedient or when petitioned to do so by seventy-five resident land-owners, to order an election called for the purpose of determining whether the county shall take up and prosecute the work of tick eradication in said county. Said election shall be ordered and held not less than sixty days after the filing of the petition. At said election the ballots shall have printed upon them "For Tick Eradication in ———— County" and "Against Tick Eradication in ———— County." The officers of said election shall hold said election and make return thereof as provided by law in cases of other elections as nearly as may be. Said returns shall be made returnable to the county judge of the county. The commissioners court shall meet and canvas said returns as soon as practicable after such election, and if they find that a majority of all the votes cast were in favor of tick eradication under the direction of the Live Stock Sanitary Commission, they shall so certify and cause publication of same to be made in a newspaper published in said county, which publication shall be certified to by the county judge of said county, and said certificate shall be filed with the county clerk of said county, which said certificate shall be admissible as evidence in any of the courts of this State. The county judge shall immediately so notify the Live Stock Sanitary Commission, and upon receipt of such notice from the county judge of the county so holding the election, the Live Stock Sanitary Commission shall cause to be issued a supplemental proclamation signed by

the Governor of Texas, proclaiming a quarantine around said county, and the citizens of said county in co-operation with and under the direction of the Live Stock Sanitary Commission shall begin work of tick eradication within thirty days of the issuance of said supplemental proclamation. Should the commissioners court find that a majority of the votes cast were against tick eradication, then the county judge shall so notify the Live Stock Sanitary Commission.''

A careful reading of the above will make apparent that what is voted upon by the voters of a county, is tick eradication *under the direction of the Live Stock Sanitary Commission*, and that when it is determined that a majority of said votes are favorable, the *Live Stock Sanitary Commission* is to be notified thereof, and they will cause the proper supplemental proclamation to be issued by the Governor, and thereupon, the citizens of such county, *in co-operation with, and under the direction of the Live Stock Sanitary Commission*, shall at once begin the work of tick eradication, etc. A further examination of the entire Act in question, shows stringent regulations and penalties against the movement in the many ways named, of cattle, etc., out of quarantined territory and premises.

A moment's reflection must convince any one that there must be some one vested with power and authority to determine when such quarantine shall end, for it cannot be tolerated that a law can be voted or proclaimed into existence that would forever put any kind of barrier to the free movement of cattle, etc., from and into different parts of the State of Texas, when the purposes of the quarantine were attained. There seems nowhere in said Act a provision for the repeal by popular vote, of the Tick Eradication Law, when voted into existence by a county, and we are compelled by all the provisions mentioned, and others, to conclude that the power to determine when such territory should be released, or declared free from ticks, and the cattle, etc., therein, permitted to be moved, is confided to the Live Stock Sanitary Commission, to be exercised by the promulgation of proper rules and regulations, which shall be made effective by a proclamation of the Governor.

By the provisions of Section 8 of said Act, Coleman County is placed in what is called "Zone No. 1." Section 9 of said Act contains the following provisions:

"Provided further, that immediately after March 1, 1919, the Live Stock Sanitary Commission shall make and certify to the Governor of Texas a list of the names of the counties in Zone 1. that have not been freed from ticks and *released from quarantine* by the Live Stock Sanitary Commission: whereupon the Governor shall issue his proclamation proclaiming a quarantine in and around such counties, and thereafter all of such counties shall take up the work of tick eradication, and shall be subject to all the provisions of Section 7 of this Act.''

This seems to sustain our view that the said Commission has the right and power to decide which counties have, and which have not been freed from ticks; and to begin actively the work of tick eradication under their direction in those counties they decide are not free from said ticks by March 1, 1919.

Believing this view correct, and noting that said Supplemental Proclamation No. 12 carries the statement that said quarantine rules and regulations have been regularly adopted by the Live Stock Commission of Texas and are to be in effect on and after December 1, 1918, we are forced to conclude that in the absence of anything shown to the contrary, we must give effect to said proclamation and to the declaration of the Live Stock Sanitary Commission contained therein, that Coleman County has been released from quarantine, and, therefore, it follows that we are of opinion that at the time of this prosecution quarantine operations had been suspended in said county and appellant could only have been legally convicted for violating such local quarantine as might have been declared by said Commission against his premises or stock, after December 1, 1918. Under this view, it is not necessary to notice or pass upon any of the other points involved in this case.

For the reasons stated, the judgment of the trial court is reversed, and the cause ordered dismissed.

*Dismissed.*

ON REHEARING.

June 25, 1920.

LATTIMORE, JUDGE.—We have again gone carefully over the provisions of our statute involved in this case. The motion for rehearing on behalf of the State, urges that we misconstrued the purpose and effect of the proclamation of the Governor, and that same did and could have no effect on tick eradication in a county which had voted in favor of such proposition at a local option election held for that purpose. As we understand the Act of 1917 providing for tick eradication, it divided the entire State of Texas into three zones, or districts for tick eradication purposes, and provided a specific time when the law should become applicable to each zone, regardless of whether the territory comprising the same, or the various counties therein, had theretofore voted to take up the work of tick eradication or not. It is also provided by Section 7 of said Act, in effect, that any county in any zone need not wait for the statutory time fixed when the law should become effective throughout the given zone, but by its own voluntary vote, taken in accordance with the manner therein provided, might hasten the coming application of the law to itself by such local option election. This, as we under-

stand it, is the only effect of such election; it amounts to an invitation by the given county holding the election, to the Livestock Sanitary Commission, to at once begin the work of tick eradication in such county. We also understand that when the time fixed by statute arrives, the authority is confided in the Commission to notify the Governor, and certify to him a list of those counties in the respective zones, which were not freed from ticks, or released from quarantine, and upon receipt of such notice, the Governor should issue a proclamation proclaiming a quarantine in and around such counties, and that all such counties should then take up the work of tick eradication, and be subject to the provisions of said Act, without regard to whether they had held elections. In other words, when the time fixed by statute for the going into effect of this law, arrived—it was the duty, power, and province of the Commission to furnish to the Governor a list of the counties in such zone which were not freed from ticks and released from quarantine. Declared free from ticks and released from quarantine by whom? There is but one answer. The only authority to declare any county freed of ticks and released from quarantine under the tick eradication law, was the Livestock Sanitary Commission of Texas. That there had been a local option election, amounting only to an invitation to the said Commission to take up the work of tick eradication in said county, would not change, alter, or affect the right and power of said Commission to declare any given county in said zone freed from ticks and released from quarantine; or, on the other hand, to certify to the Governor that it was not so situated. It is contended that such power extended only to the release from those provisions of the quarantine which affected the movement of the animals coming under the terms of the law, but the contention is more plausible than sound. No distinction or differentiation in kinds and characters of quarantine appears in said Act. Section 9, in terms provides for quarantine for tick eradication purposes. Section 10 provides a penalty for one who shall move cattle, etc.; in the territory quarantined under the provisions of Section 9, except in accordance with the rules and requirements provided by said Commission. We do not think the question of an election vel non affects the power of said Commission to declare a given county freed from ticks and released from quarantine. The only question that troubles us is whether our construction of the effect of Proclamation No. 12 was correct.

A closer scrutiny of said proclamation reveals that while the opening paragraph thereof recites in terms that the Federal Bureau of Animal Industry had released from fever tick quarantine, all counties named therein, effective December 1, 1918; and the Livestock Sanitary Commission has released all the premises, cattle, etc., in such territory, from quarantine, except such as may be placed under local quarantine on and after December 1, 1918;—that this confusing statement is but the preamble to the effective proclamation which

follows,· and that the succeeding paragraphs of the proclamation proper, contain reference to release from that character of quarantine which relates to the movement only of the quarantined stock. We have, therefore, concluded that while said proclamation is susceptible of a different construction, the real effective purpose thereof is confined to a release of cattle in the territory mentioned in said proclamation from quarantine, only in so far as the same forbade the movement of such cattle, etc. So concluding, we feel it to be our duty to modify our former opinion to that extent. Since the rendition of that opinion we have held in the case of ex parte Leslie that the notices provided for by this Act, as it existed when the instant case was filed, were too indefinite to be effective, and that portion of the law was invalid. For the same reason as given in the Leslie case, 87 Texas Crim. Rep., 476, this case will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

### ON REHEARING.

### October 13, 1920.

LATTIMORE, JUDGE.—Appellant presents his motion for rehearing asking, among other things, that we correct our order disposing of this case as made in our former judgment. By reference to our original judgment, it will be observed that we directed that the cause be reversed and dismissed.

That portion of our judgment on rehearing, in which we directed that the cause be remanded, was inadvertent. To the extent of directing that the judgment of the trial court be reversed and dismissed, the motion will be granted, but no further.

This cause will be reversed and dismissed.

LL                                              *Reversed and Dismissed.*