COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-319-CR

 

 

THE STATE OF TEXAS                                                                STATE

 

                                                   V.

 

MICHAEL JOSEPH RHINE                                                         APPELLEE

 

                                              ------------

 

         FROM COUNTY
CRIMINAL COURT NO. 2 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction








In one issue, the State of Texas asserts that the
trial court erred by granting the Defendant=s Motion
to Quash Information and thereby agreeing with Michael Joseph Rhine=s
argument that the Texas Legislature=s
delegation of certain duties to the Texas Commission on Environmental Quality (ATCEQ@), as
conferred by section 382.018 of the Texas Health and Safety Code, violates the Anondelegation
doctrine.@  We reverse and remand.

II. 
Factual and Procedural History

Rhine admitted to starting a fire on July 8,
2005.  The material contained in the fire
included crossties, fiberglass, tires, and PVC pipe.  On December 12, 2006, Rhine was charged with
violating subsection (a)(5) of section 7.177 of the Texas Water Code, entitled AViolations
of Clean Air Act.@ 
Tex. Water Code Ann. '
7.177(a)(5) (Vernon 2000). Rhine filed a motion to quash the information,
alleging this provision of the Texas Water Code is void in that the legislature
had unconstitutionally delegated authority to an executive branch agency in
violation of the nondelegation doctrine. 
After hearing the argument of counsel, the trial court granted the
motion.  This appeal resulted.

III. 
Background








The United States Environmental Protection Agency
has set standards for cleanliness of ambient air pursuant to the Federal Clean
Air Act.  See 42 U.S.C.A. ''
7401-7671 (West 1995 & Supp. 2003). 
One result of that act is that states, including Texas, prepared written
plans to meet these standards, including legal standards limiting the emissions
of contaminants.  See id. '
7410(a)(2).  Our state agency addressing
the safeguarding of Athe [S]tate=s air
resources from pollution by controlling or abating air pollution and emissions
of air contaminants@ is the Texas Commission on
Environmental Quality.  Tex. Health & Safety Code Ann. ' 382.002
(Vernon 2001).

The specific violation with which Rhine was
charged reads as follows: A(a) A
person commits an offense if the person intentionally or knowingly, with
respect to the person=s conduct, violates: . . . (5)
an order, permit, or exemption issued or a rule adopted under Chapter 382,
Health and Safety Code.@ 
Tex. Water Code Ann. '
7.177(a)(5).  That chapter of the health
and safety code reads in part that Athe
commission by rule may control and prohibit the outdoor burning of waste and
combustible material and may include requirements concerning the particular
method to be used to control or abate the emission of air contaminants
resulting from that burning.@  Tex.
Health & Safety Code Ann. '
382.018(a) (Vernon Supp. 2007).  








Pursuant to the foregoing health and safety code
provision, the TCEQ enacted provisions of the Texas Administrative Code, which
read: A[n]o
person may cause, suffer, allow, or permit any outdoor burning within the State
of Texas, except as provided by this subchapter or by orders or by permits of
the commission,@ and has specifically prohibited
the burning of A[e]lectrical insulation, treated
lumber, plastics, non-wood construction/demolition materials, heavy oils,
asphaltic materials, potentially explosive materials, chemical wastes, and
items containing natural or synthetic rubber. . . .@  30 Tex.
Admin. Code '' 111.201, 111.219(7) (West
2007).  Burning prohibited materials is
punishable by a fine of not less than $1,000 or more than $50,000, and/or
confinement not to exceed 180 days.  See Tex.
Water Code Ann. ' 7.177(b) (referencing '
7.187(1)(B)&(2)(C)).

Thus, pursuant to the Federal Clean Air Act, the
Texas Legislature has sought by statute to control air pollution by prohibiting
the outdoor burning of waste and combustible material, and by setting penalties
therefor.  In doing so, however, the
legislature delegated authority to the TCEQ to determine precisely which
materials should be placed on the burn ban list.  It is this delegation that Rhine successfully
argued to the trial court was prohibited by the Anondelegation
doctrine.@ 


IV. 
Standard of Review








Here, the record shows that the trial court had
the following before it, in ruling on Defendant=s Motion
to Quash:  the indictment, the motion to
quash, the State=s Reply to Defendant=s Motion
to Quash Information, and the arguments of counsel.  AWhen the
resolution of a question of law does not turn on an evaluation of the
credibility and demeanor of a witness, then the trial court is not in a better
position to make the determination, so appellate courts should conduct a de
novo review of the issue.@  State v. Moff, 154 S.W.3d 599, 601
(Tex. Crim. App. 2004).  Therefore, we
conduct a de novo review of the trial court=s
ruling.  See id.  

IV.  The
Nondelegation Doctrine

A. 
Background

The genesis of our nondelegation doctrine in
Texas is Article II, Section 1 of the Texas Constitution of 1876, which reads: 

Sec. 1.  The powers of the Government of the State of
Texas shall be divided into three distinct departments, each of which shall be
confided to a separate body of magistracy, to wit: Those which are Legislative
to one; those which are Executive to another, and those which are Judicial to
another; and no person, or collection of persons, being of one of these departments,
shall exercise any power properly attached to either of the others, except in
the instances herein expressly permitted.

 

Tex. Const. art. II, ' 1.  Simply put,A[t]he
power to pass laws rests with the Legislature, and that power cannot be
delegated to some commission or other tribunal.@  Brown v. Humble Oil & Refining Co.,
126 Tex. 296, 306, 83 S.W.2d 935, 941 (1935); see also Williams v. Castleman,
112 Tex. 193, 198-99, 247 S.W. 263, 265 (1922) (A[T]he
primary rule of interpreting and construing the Constitution is to ascertain
the intention of the people in adopting it, and [to] give it effect to that
intention.@); accord Lanford v.
Fourteenth Court of Appeals, 847 S.W. 581, 585 (Tex. Crim. App. 1993).








Eleven years ago, the Texas Supreme Court  discussed the origin and application of this
doctrine at length in Texas Boll Weevil Eradication Foundation, Inc. v.
Lewellen, 952 S.W.2d 454 (Tex. 1997). 
The court observed that, in our complex society, it is not possible for
the Legislature to shoulder the burden of drafting the infinite minutiae
required to implement every single law necessary to adequately govern the State
of Texas: 

Yet, like many truisms,
these blanket pronouncements [of the nondelegation doctrine] should not be read
too literally.  Even in a simple society,
a legislative body would be hard put to contend with every detail involved in
carrying out its laws; in a complex society it is absolutely impossible to do
so.  Hence, legislative delegation of
power to enforce and apply law is both necessary and proper.  Such power must almost always be exercised
with a certain amount of discretion, and at times the line between making laws
and enforcing them may blur.  

 

Id. at 466 (citation omitted).  The Court observed from a historical
perspective,








Even in its heyday, the
nondelegation doctrine was sparingly applied, having been used by the United
States Supreme Court to strike down a federal statute only three times.  Since the Court retreated from its opposition
to New Deal initiatives, it has consistently upheld congressional
delegations.  Texas courts have also
generally upheld legislative delegations to state or municipal agencies.  We most recently [noted that] . . . the Texas
Legislature may delegate its powers to agencies established to carry out
legislative purposes, as long as it establishes Areasonable standards to
guide the entity to which the powers are delegated.  Requiring the legislature to include every
detail and anticipate unforeseen circumstances would . . . defeat the purpose
of delegating legislative authority.@  The
separation of powers clause [Tex. Const.
art. II, ' 1] requires that the
standards of delegation be Areasonably clear and hence acceptable as a
standard of measurement.@  

 

Id. at 467 (citations omitted).  The Court goes on to cite twenty-one separate
Texas cases, both civil and criminal, regarding such delegation.  Id. at 467-68. When the nondelegation
doctrine has been upheld in Texas, it has often been premised on a vagueness
with regard to the reasonable standards provided by the Legislature, or
involved delegations to the judicial branch. 
See, e.g., Tex. Antiquities Comm. v. Dallas County Comty.
Coll. Dist., 554 S.W.2d 924 (Tex. 1977); Bullock v. Calvert, 480
S.W.2d 367 (Tex. 1972); Chem. Bank & Trust Co. v. Falkner, 369
S.W.2d 427 (Tex. 1963); Davis v. City of Lubbock, 160 Tex. 38, 326
S.W.2d 699 (1959); Daniel v. Tyrrell & Garth Inv. Co., 127 Tex. 213,
93 S.W.2d 372 (1936); Ex parte Leslie, 87 Tex. Crim. 476, 223 S.W. 227
(1920); see also Ex parte Maynard, 101 Tex. Crim. 256, 275 S.W. 1070
(1924); Ex parte Humphrey, 92 Tex. Crim. 501, 244 S.W. 822 (1922); Int=l Ass=n of
Firefighters, Local Union No. 2390 v. City of Kingsville, 568
S.W.2d 391 (Tex. Civ. App.CCorpus
Christi 1978, writ ref=d n.r.e.); In re Johnson,
554 S.W.2d 775 (Tex. Civ. App.CCorpus
Christi 1977, writ ref=d n.r.e.).

 

 

 








B.  Public
or Private

An initial determination that must be made in
deciding whether the nondelegation doctrine applies is whether the legislative
delegation was to a public or private entity, because

private delegations
clearly raise even more troubling constitutional issues than their public
counterparts . . . [since] the basic concept of democratic rule under a
republican form of government is compromised when public powers are abandoned
to those who are neither elected by the people, appointed by a public official
or entity, nor employed by the government.

 

Lewellen, 952 S.W.2d at 469.

The State presents nine reasons why the TCEQ
should be considered a public entity.[2]  Those reasons are as follows:

(1) the commission is
subject to the Texas Sunset Act, and unless continued in existence as provided
in Chapter 5 of the Texas Water Code, the commission is abolished and the
chapter would expire (See Tex.
Water Code Ann. ' 5.014 (Vernon 2000));

 

(2) the commission is
composed of three members appointed by the governor, with the advice and
consent of the senate (See Tex.
Water Code Ann. ' 5.052 (Vernon Supp.
2007));

 

(3) each member of the
commission is an officer of the state, as the term is used in the constitution,
and each member shall take the official oath of office (See Tex. Water Code Ann. ' 5.055 (Vernon 2000));

 








(4) the commission must
comply with Section 2001.004 of the Government Code, by indexing and making
available for public inspection all rules and other written statements of
policy or interpretations formulated, adopted, or used by the commission in the
discharge of its functions, and all final orders, decisions, and opinions (See
Tex. Water Code Ann. ' 5.121 (Vernon 2000));

 

(5) the financial
transactions of the commission are subject to audit by the state auditor in
accordance with Chapter 321 of the Government Code (See Tex. Water Code Ann. ' 5.171 (Vernon 2000));

 

(6) the commission shall
have a seal bearing the words Texas Natural Resources Conservation Commission
(now TCEQ) encircling the oak and olive branches common to other official seals
(See Tex. Water Code Ann. ' 5.179 (Vernon 2000));

 

(7) the TCEQ Operating
Fund is established in the treasury (See Tex. Water Code Ann. ' 5.237 (Vernon 2000));

 

(8) judicial review of
commission acts is allowed (See Tex.
Water Code Ann. ' 5.351 (Vernon 2000));
and 

 

(9) the Water Code does
not waive TCEQ=s sovereign immunity from
suit (See Tex. Natural Res. Conservation Comm=n v. IT-Davy, 74 S.W.3d 849, 859
(Tex. 2002)).

 

In Lewellen, our supreme court enumerated
several factors that it considered in determining whether a foundation was a
public or private entity for purposes of the nondelegation doctrine.  Those private and public factors are as
follows:

Private-

1. the funds collected
are not required to be deposited in the state treasury;

 








2. the funds collected
are not subject to state purchasing or audit requirements;

 

3. the board members are
not required to take oaths of office; and

 

4. no provision is made
for administrative appeal from board decisions.

 

Public-

1. the commission is
exempt from taxation and board members are afforded state indemnification;

 

2. the board members,
officers, and employees have official immunity except for gross negligence,
criminal conduct, or dishonesty;

 

3. the commission must
adopt and publish its rules in accordance with state requirements;

 

4. the commission may be
dissolved by the Commissioner when its purpose has been fulfilled;

 

5. the commission is
subject to the Texas Sunset Act; and 

 

6. the Legislature
specifically denominates the commission as a Agovernmental unit.@

 

See Lewellen, 952 S.W.2d at 470.

Considering the purpose and spirit behind the
private/public determination in Lewellen and the reasons urged by the
State regarding the TCEQ=s public nature, we hold that
for purposes of the nondelegation doctrine, the TCEQ is a public entity, and
hence the heightened scrutiny applied to a private delegation is inapplicable.








V. 
Application

A. 
Classifications

There are at least six classifications of
delegations of legislative responsibility which do not run afoul of the
nondelegation doctrine enunciated in Article II, section 1 of our state=s
constitution.  See Hous. Auth. of City
of Dallas v. Higginbotham, 135 Tex. 158, 171-72, 143 S.W.2d 79, 87
(1940).  Rhine asserts that the first of
these six classifications is the only one that is ever potentially applicable
in this case, and that the nature of the delegation to the TCEQ does not fit
under this sole possibility.  That
classification exists when Athe
legislature because of the nature of the subject of legislation cannot
practically and efficiently exercise such powers.@  Id. at 171, 143 S.W.2d at 87.  Rhine argues two reasons why the legislature=s
delegation in this case under that circumstance fails: First, there is no
evidence to suggest that Athe nature of the subject of
legislation@ could not have been Apractically
and efficiently exercise[d]@ by the
Texas Legislature.  Second, section
382.018 of the Texas Health and Safety Code provides no definitions, and with
few exceptions, places no limitations upon the TCEQ=s
authority to promulgate rules that establish criminal violations.

 

 








B. 
Standards in General 

Our supreme court has told us that for a
commission to promulgate rules, regulations, and orders, it is necessary to
have a well-defined standard or rule in the applicable statute.  See Brown, 126 Tex. at 306, 83 S.W.2d
at 941.  Likewise, the agency or
commission must not exceed its rule making authority, that is, in Aexercising
the powers and the broad authority granted by the Legislature, the only requirement
is that rules and regulations must be consistent with the Constitution and
Statutes of this State.@ 
Gerst v. Oak Cliff Sav. & Loan Ass=n, 432
S.W.2d 702, 706 (Tex. 1968); see Dallas County Bail Bond Bd. v. Stein,
771 S.W.2d 577, 580 (Tex. App.CDallas
1989, writ denied); State Bd. of Ins. v. Deffebach, 631 S.W.2d 794, 798
(Tex. App.CAustin 1982, writ ref=d
n.r.e.).  

The legislature may delegate to a subordinate
body a duty to administer and enforce its legislative functions, but must
insure that the statute delegating such power contains definite guidelines and
must prescribe sufficient standards to guide the discretion conferred.  In re Johnson, 554 S.W.2d at 780-81.  The standards must be reasonably clear and
acceptable as standards of measurement.  Edgewood
Indep. Sch. Dist. v. Meno, 917 S.W.2d 717, 741 (Tex. 1995).

 








C.  The
Legislative Acts

So what exactly was the TCEQ empowered to
do?  This is set forth in subchapter B of
section 382 of the Health and Safety Code: 

(a) The commission shall:

 

(1) administer this chapter;

 

(2) establish the level
of quality to be maintained in the state=s air; and

 

(3) control the quality of the state=s air.

 

(b) The commission shall
seek to accomplish the purposes of this chapter through the control of air
contaminants by all practical and economically feasible methods.

 

(c) The commission has
the powers necessary or convenient to carry out its responsibilities.

 

Tex. Health & Safety Code Ann. '
382.011.  And, as previously discussed,
the legislature promulgated the consequences for violating the rules and
regulations set by the commission.  See
Tex. Water Code Ann. ' 7.177. 

D.  The
Legislative Standards

The overall policy and purpose of the Texas Clean
Air Act, which confers on the TCEQ certain rule making authority, is set forth
as follows:








(a) The policy of this
state and the purpose of this chapter are to safeguard the state=s air resources from
pollution by controlling or abating air pollution and emissions of air
contaminants, consistent with the protection of public health, general welfare,
and physical property, including the esthetic enjoyment of air resources by the
public and the maintenance of adequate visibility.

 

(b) It is intended that
this chapter be vigorously enforced and that violations of this chapter or any
rule or order of the [TCEQ] result in expeditious initiation of enforcement
actions as provided by this chapter.

 








Tex. Health & Safety Code Ann. '
382.002(a), (b) (Vernon 2001).  The
legislature has provided definitions of Aair
contaminant@ and Aair
pollution@; has  provided for various reporting procedures,
such as instructing the commission to prepare and develop a plan for control of
the state=s air, designate air quality
control regions, obtain information to develop an inventory of air
contaminants; and has given the commission certain powers to enable it to
accomplish these tasks and implement its overall mission.  See generally id. ''
382.003-.016.  Specifically at issue here
is the legislature=s delegation to the TCEQ of
authority to control outdoor burning of waste and combustible materials.  See id. '
382.018.  In response, and pursuant to
this delegation, the TCEQ then enumerated a short list of items that it
prohibited from burning, and which, in part, Rhine was alleged to have
violated.  See 30 Tex. Admin. Code ' 111.219
(West 2007) (entitled AGeneral Requirements for
Allowable Outdoor Burning.@)[3]   

Rhine=s first
complaint regarding the delegation is that there is no evidence that the nature
of the subject of the legislation could not have been practically and
efficiently exercised by the Texas Legislature. 
We disagree.  We hold that it is
neither practical nor efficient for the Texas Legislature, which meets every
other year for a few months, to determine exactly what materials should be
banned from outdoor burning, and under what circumstances,  including the wind speed, time of day, and
other minutiae related to curbing the legislatively-defined Aair
pollution.@ 


Rhine=s second
complaint is as follows:  

Section 382.018 of the
Texas Health and Safety Code provides no definitions, and with very few
exceptions places no limitations upon, the TCEQ=s authority to promulgate
rules that establish criminal violations, including those amenable to
prosecution under Texas Water Code, Section 7.177(a)(5).  








While Section 382.018 does mandate limited circumstances wherein the
Commissioner Ashall authorize outdoor
burning@ notwithstanding the
delegation, and does describe limited circumstances wherein the TCEQ Amay not control or
prohibit out door burning,@ the delegation does not contain sufficient
guidance concerning what conduct may be prohibited (and made a criminal
offense) under the power delegated. 

 

Again we disagree.  First, the
key phrase in section 382.018(a), Aair
contaminants,@ is defined in section
382.003(2).  See Tex. Health & Safety Code Ann. '
382.003(2).  Second, section 382.018(b) discusses when and under what
circumstances, the commission shall authorize outdoor burning.  Id. ' 382.018(b).  Third, section 382.018(c) limits the
commission=s authority under section
382.018(b).  Id. ' 382.018(c).  Fourth, section 382.018(d) further limits the
circumstances under which the commission can control certain types of outdoor
burning under 382.018(b).  Id. ' 382.018(d).  Fifth, section 382.018(e) requires
notification of TCEQ under certain situations that involve the supervised
burning of waste.  Id. ' 382.018(e).  We hold that these limitations and
guidelines, along with our reasoning addressing Rhine=s first
complaint, compel us to the conclusion that his second complaint is without
merit.  

 

 

 

 

 








VI. 
Conclusion

We sustain the State=s point
and hold that the trial court erred by granting Defendant=s Motion
to Quash Information based on the premise that there was an unconstitutional
delegation of authority by the legislature to an executive agency in violation
of Article II, Section 1 of the Texas Constitution of 1876.  The case is reversed and remanded to the
trial court for further proceedings.

 

 

 

BOB
MCCOY

JUSTICE

 

PANEL B:   DAUPHINOT,
GARDNER, and MCCOY, JJ.

 

DAUPHINOT, J. dissents
with opinion.

 

PUBLISH

 

DELIVERED: May 1, 2008

 

 

 

 

 

 

 

 

 

 

 

 

 

 








 




 
 
 
 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-319-CR

 

 

THE
STATE OF TEXAS                                                                STATE

 

                                                   V.

 

MICHAEL
JOSEPH RHINE                                                         APPELLEE

 

                                              ------------

 

         FROM COUNTY CRIMINAL
COURT NO. 2 OF DENTON COUNTY

 

                                              ------------

 

                                   DISSENTING OPINION

 

                                              ------------

The trial court held that the Texas Legislature
improperly delegated certain authority to an administrative commission, the
Texas Commission on Environment Quality (TCEQ), with section 382.018 of the
Texas Health and Safety Code.[4]  I would affirm the trial court=s
judgment.  Because the majority does not,
I respectfully dissent from the majority opinion.








As the
majority provides, the legislature established criminal penalties for violation
of the TCEQ directives banning burning of certain items under certain
circumstances.[5]  The items and circumstances change according
to some formula known only to the TCEQ. 
Apparently because the items and circumstances change so often, the
majority concludes that 

it is neither practical
nor efficient for the Texas Legislature, which meets every other year for a few
months, to determine exactly what materials should be banned from outdoor
burning, and under what circumstances, including the wind speed, time of day,
and other minutia related to curbing the legislatively-defined Aair pollution.@[6] 

 

If the
legislature cannot keep up with the constantly changing determination of what
is unlawful, how does an ordinary person have notice of what is prohibited?

Article III, ' 1 of the Texas
Constitution delegates to the Legislature law‑making authority including
the right to define crime and fix penalties therefor. 

 

It is well established
that the fixing of penalties and the punishment for offenses under the penal
laws of the State is within the exclusive domain of the Legislature.[7]

 








This
authority may not properly be delegated to or assumed by another branch of
government or commission except where expressly permitted in the Constitution.[8]


Were the
penalty a sanction short of imprisonment, this improper delegation would be
less dangerous.  But the penalty for a
violation of the TCEQ=s burn ban of the day is
imprisonment for up to 180 days and/or a fine ranging from $1,000 to $50,000.[9]  Clearly this is an issue of improper
delegation of penal legislation, yet the majority addresses the issue only in
terms of civil law.  I submit that
existing criminal law should at least be considered.  But even if we look to the teachings of the
Supreme Court of Texas, we are instructed that A[t]he
power to make laws is vested through the Constitution in the Legislature.  This power gives the Legislature the right to
define crimes and the punishment therefor, and this is done by statute.@[10]








In  Ex parte Leslie, the Texas Court of
Criminal Appeals invalidated a statute empowering the livestock commission to
create a penal offense for failing to dip cattle for fever ticks, holding that
the law failed to reasonably guide the commissioner in defining the elements of
the offense.[11]


Because
the legislature has delegated to the TCEQCa
commission created by the executive branchCthe
authority to define the elements of a crime that  carries a penalty of up to 180 days=
confinement, I would hold, as did the trial court, that this is an improper
delegation of authority granted only to the legislature by our Constitution and
affirm the trial court=s judgment.  Because the majority does not, I respectfully
dissent.

 

LEE ANN DAUPHINOT

JUSTICE

 

PUBLISH

DELIVERED:
May 1, 2008











[1]See Tex.
R. App. P.
47.4.





[2]  Rhine does not address, and hence does not
dispute, this assertion.  





[3]In addition, this code
section also touches on certain notifications to the Texas Forest Service,
exceptions for city ordinances, wind direction and meteorological factors,
stationing of flag-persons on roads, and other meteorological and timing
considerations including wind speed.  Id.





[4]Tex.
Health & Safety Code Ann. ' 382.018 (Vernon Supp.
2007).





[5]Majority op. at 4, 13.





[6]Id. at 15.





[7]Ex parte Hayward, 711 S.W.2d 652, 655 (Tex.
Crim. App. 1986); see also Tex.
Const. art. III, ' 1.





[8]See Ex parte Humphrey, 92 Tex. Crim. 501, 244
S.W. 822, 824 (1922).





[9]See Tex.
Water Code Ann. '' 7.177(b), 7.187(1)(B),
(2)(C) (Vernon 2000).





[10]Dendy v. Wilson, 179 S.W.2d 269, 273
(Tex. 1944).





[11]Ex parte Leslie, 87 Tex. Crim. 476, 223
S.W. 227, 227, 230 (1920).