

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-319-CR

THE STATE OF TEXAS                                                    STATE

V.

MICHAEL JOSEPH RHINE                                              APPELLEE

------------

FROM COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In one issue, the State of Texas asserts that the trial court erred by granting the Defendant's Motion to Quash Information and thereby agreeing with Michael Joseph Rhine's argument that the Texas Legislature's delegation of certain duties to the Texas Commission on Environmental Quality ("TCEQ"),

---

[1] *See* TEX. R. APP. P. 47.4.

as conferred by section 382.018 of the Texas Health and Safety Code, violates the "nondelegation doctrine." We reverse and remand.

## II. Factual and Procedural History

Rhine admitted to starting a fire on July 8, 2005. The material contained in the fire included crossties, fiberglass, tires, and PVC pipe. On December 12, 2006, Rhine was charged with violating subsection (a)(5) of section 7.177 of the Texas Water Code, entitled "Violations of Clean Air Act." TEX. WATER CODE ANN. § 7.177(a)(5) (Vernon 2000). Rhine filed a motion to quash the information, alleging this provision of the Texas Water Code is void in that the legislature had unconstitutionally delegated authority to an executive branch agency in violation of the nondelegation doctrine. After hearing the argument of counsel, the trial court granted the motion. This appeal resulted.

## III. Background

The United States Environmental Protection Agency has set standards for cleanliness of ambient air pursuant to the Federal Clean Air Act. *See* 42 U.S.C.A. §§ 7401-7671 (West 1995 & Supp. 2003). One result of that act is that states, including Texas, prepared written plans to meet these standards, including legal standards limiting the emissions of contaminants. *See id*. § 7410(a)(2). Our state agency addressing the safeguarding of "the [S]tate's air resources from pollution by controlling or abating air pollution and emissions of

2

air contaminants" is the Texas Commission on Environmental Quality. TEX. HEALTH & SAFETY CODE ANN. § 382.002 (Vernon 2001).

The specific violation with which Rhine was charged reads as follows: "(a) A person commits an offense if the person intentionally or knowingly, with respect to the person's conduct, violates: . . . (5) an order, permit, or exemption issued or a rule adopted under Chapter 382, Health and Safety Code." TEX. WATER CODE ANN. § 7.177(a)(5). That chapter of the health and safety code reads in part that "the commission by rule may control and prohibit the outdoor burning of waste and combustible material and may include requirements concerning the particular method to be used to control or abate the emission of air contaminants resulting from that burning." TEX. HEALTH & SAFETY CODE ANN. § 382.018(a) (Vernon Supp. 2007).

Pursuant to the foregoing health and safety code provision, the TCEQ enacted provisions of the Texas Administrative Code, which read: "[n]o person may cause, suffer, allow, or permit any outdoor burning within the State of Texas, except as provided by this subchapter or by orders or by permits of the commission," and has specifically prohibited the burning of "[e]lectrical insulation, treated lumber, plastics, non-wood construction/demolition materials, heavy oils, asphaltic materials, potentially explosive materials, chemical wastes, and items containing natural or synthetic rubber. . . ." 30 TEX. ADMIN. CODE §§

3

111.201, 111.219(7) (West 2007). Burning prohibited materials is punishable by a fine of not less than $1,000 or more than $50,000, and/or confinement not to exceed 180 days. *See* TEX. WATER CODE ANN. § 7.177(b) (referencing § 7.187(1)(B)&(2)(C)).

Thus, pursuant to the Federal Clean Air Act, the Texas Legislature has sought by statute to control air pollution by prohibiting the outdoor burning of waste and combustible material, and by setting penalties therefor. In doing so, however, the legislature delegated authority to the TCEQ to determine precisely which materials should be placed on the burn ban list. It is this delegation that Rhine successfully argued to the trial court was prohibited by the "nondelegation doctrine."

### IV. Standard of Review

Here, the record shows that the trial court had the following before it, in ruling on Defendant's Motion to Quash: the indictment, the motion to quash, the State's Reply to Defendant's Motion to Quash Information, and the arguments of counsel. "When the resolution of a question of law does not turn on an evaluation of the credibility and demeanor of a witness, then the trial court is not in a better position to make the determination, so appellate courts should conduct a *de novo* review of the issue." *State v. Moff*, 154 S.W.3d

4

599, 601 (Tex. Crim. App. 2004).  Therefore, we conduct a *de novo* review of the trial court's ruling.  *See id*.

### IV.  The Nondelegation Doctrine

#### A.  Background

The genesis of our nondelegation doctrine in Texas is Article II, Section 1 of the Texas Constitution of 1876, which reads:

> Sec. 1.  The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1.  Simply put, "[t]he power to pass laws rests with the Legislature, and that power cannot be delegated to some commission or other tribunal." *Brown v. Humble Oil & Refining Co.*, 126 Tex. 296, 306, 83 S.W.2d 935, 941 (1935); *see also Williams v. Castleman*, 112 Tex. 193, 198-99, 247 S.W. 263, 265 (1922) ("[T]he primary rule of interpreting and construing the Constitution is to ascertain the intention of the people in adopting it, and [to] give it effect to that intention."); *accord Lanford v. Fourteenth Court of Appeals*, 847 S.W. 581, 585 (Tex. Crim. App. 1993).

5

Eleven years ago, the Texas Supreme Court discussed the origin and application of this doctrine at length in *Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen*, 952 S.W.2d 454 (Tex. 1997). The court observed that, in our complex society, it is not possible for the Legislature to shoulder the burden of drafting the infinite minutiae required to implement every single law necessary to adequately govern the State of Texas:

> Yet, like many truisms, these blanket pronouncements [of the nondelegation doctrine] should not be read too literally. Even in a simple society, a legislative body would be hard put to contend with every detail involved in carrying out its laws; in a complex society it is absolutely impossible to do so. Hence, legislative delegation of power to enforce and apply law is both necessary and proper. Such power must almost always be exercised with a certain amount of discretion, and at times the line between making laws and enforcing them may blur.

*Id*. at 466 (citation omitted). The Court observed from a historical perspective,

> Even in its heyday, the nondelegation doctrine was sparingly applied, having been used by the United States Supreme Court to strike down a federal statute only three times. Since the Court retreated from its opposition to New Deal initiatives, it has consistently upheld congressional delegations. Texas courts have also generally upheld legislative delegations to state or municipal agencies. We most recently [noted that] . . . the Texas Legislature may delegate its powers to agencies established to carry out legislative purposes, as long as it establishes "reasonable standards to guide the entity to which the powers are delegated. Requiring the legislature to include every detail and anticipate unforeseen circumstances would . . . defeat the purpose of delegating legislative authority." The separation of powers clause [TEX. CONST. art. II, § 1] requires that the standards of delegation be

6

"reasonably clear and hence acceptable as a standard of measurement."

*Id*. at 467 (citations omitted). The Court goes on to cite twenty-one separate Texas cases, both civil and criminal, regarding such delegation. *Id*. at 467-68. When the nondelegation doctrine has been upheld in Texas, it has often been premised on a vagueness with regard to the reasonable standards provided by the Legislature, or involved delegations to the judicial branch. *See, e.g.*, *Tex. Antiquities Comm. v. Dallas County Comty. Coll. Dist.*, 554 S.W.2d 924 (Tex. 1977); *Bullock v. Calvert*, 480 S.W.2d 367 (Tex. 1972); *Chem. Bank & Trust Co. v. Falkner*, 369 S.W.2d 427 (Tex. 1963); *Davis v. City of Lubbock*, 160 Tex. 38, 326 S.W.2d 699 (1959); *Daniel v. Tyrrell & Garth Inv. Co.*, 127 Tex. 213, 93 S.W.2d 372 (1936); *Ex parte Leslie*, 87 Tex. Crim. 476, 223 S.W. 227 (1920); *see also Ex parte Maynard*, 101 Tex. Crim. 256, 275 S.W. 1070 (1924); *Ex parte Humphrey*, 92 Tex. Crim. 501, 244 S.W. 822 (1922); *Int'l Ass'n of Firefighters, Local Union No. 2390 v. City of Kingsville*, 568 S.W.2d 391 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.); *In re Johnson*, 554 S.W.2d 775 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.).

**B. Public or Private**

An initial determination that must be made in deciding whether the nondelegation doctrine applies is whether the legislative delegation was to a public or private entity, because

> private delegations clearly raise even more troubling constitutional issues than their public counterparts . . . [since] the basic concept of democratic rule under a republican form of government is compromised when public powers are abandoned to those who are neither elected by the people, appointed by a public official or entity, nor employed by the government.

*Lewellen*, 952 S.W.2d at 469.

The State presents nine reasons why the TCEQ should be considered a public entity.[2]  Those reasons are as follows:

> (1) the commission is subject to the Texas Sunset Act, and unless continued in existence as provided in Chapter 5 of the Texas Water Code, the commission is abolished and the chapter would expire (*See* TEX. WATER CODE ANN. § 5.014 (Vernon 2000));
>
> (2) the commission is composed of three members appointed by the governor, with the advice and consent of the senate (*See* TEX. WATER CODE ANN. § 5.052 (Vernon Supp. 2007));
>
> (3) each member of the commission is an officer of the state, as the term is used in the constitution, and each member shall take the official oath of office (*See* TEX. WATER CODE ANN. § 5.055 (Vernon 2000));

---

[2] Rhine does not address, and hence does not dispute, this assertion.

(4) the commission must comply with Section 2001.004 of the Government Code, by indexing and making available for public inspection all rules and other written statements of policy or interpretations formulated, adopted, or used by the commission in the discharge of its functions, and all final orders, decisions, and opinions (*See* TEX. WATER CODE ANN. § 5.121 (Vernon 2000));

(5) the financial transactions of the commission are subject to audit by the state auditor in accordance with Chapter 321 of the Government Code (*See* TEX. WATER CODE ANN. § 5.171 (Vernon 2000));

(6) the commission shall have a seal bearing the words Texas Natural Resources Conservation Commission (now TCEQ) encircling the oak and olive branches common to other official seals (*See* TEX. WATER CODE ANN. § 5.179 (Vernon 2000));

(7) the TCEQ Operating Fund is established in the treasury (*See* TEX. WATER CODE ANN. § 5.237 (Vernon 2000));

(8) judicial review of commission acts is allowed (*See* TEX. WATER CODE ANN. § 5.351 (Vernon 2000)); and

(9) the Water Code does not waive TCEQ's sovereign immunity from suit (*See Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 859 (Tex. 2002)).

In *Lewellen*, our supreme court enumerated several factors that it considered in determining whether a foundation was a public or private entity for purposes of the nondelegation doctrine. Those private and public factors are as follows:

Private-
1. the funds collected are not required to be deposited in the state treasury;

9

2. the funds collected are not subject to state purchasing or audit requirements;

3. the board members are not required to take oaths of office; and

4. no provision is made for administrative appeal from board decisions.

Public-
1. the commission is exempt from taxation and board members are afforded state indemnification;

2. the board members, officers, and employees have official immunity except for gross negligence, criminal conduct, or dishonesty;

3. the commission must adopt and publish its rules in accordance with state requirements;

4. the commission may be dissolved by the Commissioner when its purpose has been fulfilled;

5. the commission is subject to the Texas Sunset Act; and

6. the Legislature specifically denominates the commission as a "governmental unit."

*See Lewellen*, 952 S.W.2d at 470.

Considering the purpose and spirit behind the private/public determination in *Lewellen* and the reasons urged by the State regarding the TCEQ's public nature, we hold that for purposes of the nondelegation doctrine, the TCEQ is a public entity, and hence the heightened scrutiny applied to a private delegation is inapplicable.

## V. Application

### A. Classifications

There are at least six classifications of delegations of legislative responsibility which do not run afoul of the nondelegation doctrine enunciated in Article II, section 1 of our state's constitution. *See Hous. Auth. of City of Dallas v. Higginbotham*, 135 Tex. 158, 171-72, 143 S.W.2d 79, 87 (1940). Rhine asserts that the first of these six classifications is the only one that is ever potentially applicable in this case, and that the nature of the delegation to the TCEQ does not fit under this sole possibility. That classification exists when "the legislature because of the nature of the subject of legislation cannot practically and efficiently exercise such powers." *Id*. at 171, 143 S.W.2d at 87. Rhine argues two reasons why the legislature's delegation in this case under that circumstance fails: First, there is no evidence to suggest that "the nature of the subject of legislation" could not have been "practically and efficiently exercise[d]" by the Texas Legislature. Second, section 382.018 of the Texas Health and Safety Code provides no definitions, and with few exceptions, places no limitations upon the TCEQ's authority to promulgate rules that establish criminal violations.

## B. Standards in General

Our supreme court has told us that for a commission to promulgate rules, regulations, and orders, it is necessary to have a well-defined standard or rule in the applicable statute. *See Brown*, 126 Tex. at 306, 83 S.W.2d at 941. Likewise, the agency or commission must not exceed its rule making authority, that is, in "exercising the powers and the broad authority granted by the Legislature, the only requirement is that rules and regulations must be consistent with the Constitution and Statutes of this State." *Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex. 1968); *see Dallas County Bail Bond Bd. v. Stein*, 771 S.W.2d 577, 580 (Tex. App.—Dallas 1989, writ denied); *State Bd. of Ins. v. Deffebach*, 631 S.W.2d 794, 798 (Tex. App.—Austin 1982, writ ref'd n.r.e.).

The legislature may delegate to a subordinate body a duty to administer and enforce its legislative functions, but must insure that the statute delegating such power contains definite guidelines and must prescribe sufficient standards to guide the discretion conferred*. In re Johnson*, 554 S.W.2d at 780-81. The standards must be reasonably clear and acceptable as standards of measurement. *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 741 (Tex. 1995).

## C. The Legislative Acts

So what exactly was the TCEQ empowered to do?  This is set forth in subchapter B of section 382 of the Health and Safety Code:

(a) The commission shall:

(1) administer this chapter;

(2) establish the level of quality to be maintained in the state's air; and

(3) control the quality of the state's air.

(b) The commission shall seek to accomplish the purposes of this chapter through the control of air contaminants by all practical and economically feasible methods.

(c) The commission has the powers necessary or convenient to carry out its responsibilities.

TEX. HEALTH & SAFETY CODE ANN. § 382.011.  And, as previously discussed, the legislature promulgated the consequences for violating the rules and regulations set by the commission.  *See* TEX. WATER CODE ANN. § 7.177.

## D. The Legislative Standards

The overall policy and purpose of the Texas Clean Air Act, which confers on the TCEQ certain rule making authority, is set forth as follows:

(a) The policy of this state and the purpose of this chapter are to safeguard the state's air resources from pollution by controlling or abating air pollution and emissions of air contaminants, consistent with the protection of public health, general welfare, and physical

property, including the esthetic enjoyment of air resources by the public and the maintenance of adequate visibility.

(b) It is intended that this chapter be vigorously enforced and that violations of this chapter or any rule or order of the [TCEQ] result in expeditious initiation of enforcement actions as provided by this chapter.

TEX. HEALTH & SAFETY CODE ANN. § 382.002(a), (b) (Vernon 2001). The legislature has provided definitions of "air contaminant" and "air pollution"; has provided for various reporting procedures, such as instructing the commission to prepare and develop a plan for control of the state's air, designate air quality control regions, obtain information to develop an inventory of air contaminants; and has given the commission certain powers to enable it to accomplish these tasks and implement its overall mission. *See generally id.* §§ 382.003-.016. Specifically at issue here is the legislature's delegation to the TCEQ of authority to control outdoor burning of waste and combustible materials. *See id.* § 382.018. In response, and pursuant to this delegation, the TCEQ then enumerated a short list of items that it prohibited from burning, and which, in part, Rhine was alleged to have violated. *See* 30 TEX. ADMIN. CODE § 111.219

(West 2007) (entitled "General Requirements for Allowable Outdoor Burning.")[3]

Rhine's first complaint regarding the delegation is that there is no evidence that the nature of the subject of the legislation could not have been practically and efficiently exercised by the Texas Legislature. We disagree. We hold that it is neither practical nor efficient for the Texas Legislature, which meets every other year for a few months, to determine exactly what materials should be banned from outdoor burning, and under what circumstances, including the wind speed, time of day, and other minutiae related to curbing the legislatively-defined "air pollution."

Rhine's second complaint is as follows:

Section 382.018 of the Texas Health and Safety Code provides no definitions, and with very few exceptions places no limitations upon, the TCEQ's authority to promulgate rules that establish criminal violations, including those amenable to prosecution under Texas Water Code, Section 7.177(a)(5).

While Section 382.018 does mandate limited circumstances wherein the Commissioner "shall authorize outdoor burning" notwithstanding the delegation, and does describe limited circumstances wherein the TCEQ "may not control or prohibit out door burning," the delegation does not contain sufficient guidance

---

[3] In addition, this code section also touches on certain notifications to the Texas Forest Service, exceptions for city ordinances, wind direction and meteorological factors, stationing of flag-persons on roads, and other meteorological and timing considerations including wind speed. *Id*.

concerning what conduct may be prohibited (and made a criminal offense) under the power delegated.

Again we disagree. First, the key phrase in section 382.018(a), "air contaminants," *is defined* in section 382.003(2). *See* TEX. HEALTH & SAFETY CODE ANN. § 382.003(2). Second, section 382.018(b) discusses when and under what circumstances, the commission shall authorize outdoor burning. *Id*. § 382.018(b). Third, section 382.018(c) limits the commission's authority under section 382.018(b). *Id*. § 382.018(c). Fourth, section 382.018(d) further limits the circumstances under which the commission can control certain types of outdoor burning under 382.018(b). *Id*. § 382.018(d). Fifth, section 382.018(e) requires notification of TCEQ under certain situations that involve the supervised burning of waste. *Id*. § 382.018(e). We hold that these limitations and guidelines, along with our reasoning addressing Rhine's first complaint, compel us to the conclusion that his second complaint is without merit.

## VI. Conclusion

We sustain the State's point and hold that the trial court erred by granting Defendant's Motion to Quash Information based on the premise that there was an unconstitutional delegation of authority by the legislature to an executive agency in violation of Article II, Section 1 of the Texas Constitution of 1876. The case is reversed and remanded to the trial court for further proceedings.

BOB MCCOY
JUSTICE

PANEL B:   DAUPHINOT, GARDNER, and MCCOY, JJ.

DAUPHINOT, J. dissents with opinion.

PUBLISH

DELIVERED: May 1, 2008

17



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-319-CR

THE STATE OF TEXAS                                                    STATE

V.

MICHAEL JOSEPH RHINE                                              APPELLEE

------------

FROM COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY

------------

## DISSENTING OPINION

------------

The trial court held that the Texas Legislature improperly delegated certain authority to an administrative commission, the Texas Commission on Environment Quality (TCEQ), with section 382.018 of the Texas Health and Safety Code.[4] I would affirm the trial court's judgment. Because the majority does not, I respectfully dissent from the majority opinion.

---

[4] TEX. HEALTH & SAFETY CODE ANN. § 382.018 (Vernon Supp. 2007).

As the majority provides, the legislature established criminal penalties for violation of the TCEQ directives banning burning of certain items under certain circumstances.[5]  The items and circumstances change according to some formula known only to the TCEQ.  Apparently because the items and circumstances change so often, the majority concludes that

> it is neither practical nor efficient for the Texas Legislature, which meets every other year for a few months, to determine exactly what materials should be banned from outdoor burning, and under what circumstances, including the wind speed, time of day, and other minutia related to curbing the legislatively-defined "air pollution."[6]

If the legislature cannot keep up with the constantly changing determination of what is unlawful, how does an ordinary person have notice of what is prohibited?

> Article III, § 1 of the Texas Constitution delegates to the Legislature law-making authority including the right to define crime and fix penalties therefor.

> It is well established that the fixing of penalties and the punishment for offenses under the penal laws of the State is within the exclusive domain of the Legislature.[7]

This authority may not properly be delegated to or assumed by another branch

---

[5]⬆ Majority op. at 4, 13.

[6]⬆ *Id.* at 15.

[7]⬆ *Ex parte Hayward,* 711 S.W.2d 652, 655 (Tex. Crim. App. 1986); *see also* TEX. CONST. art. III, § 1.

2

of government or commission except where expressly permitted in the Constitution.[8]

Were the penalty a sanction short of imprisonment, this improper delegation would be less dangerous.  But the penalty for a violation of the TCEQ's burn ban of the day is imprisonment for up to 180 days and/or a fine ranging from $1,000 to $50,000.[9]  Clearly this is an issue of improper delegation of penal legislation, yet the majority addresses the issue only in terms of civil law.  I submit that existing criminal law should at least be considered.  But even if we look to the teachings of the Supreme Court of Texas, we are instructed that "[t]he power to make laws is vested through the Constitution in the Legislature.  This power gives the Legislature the right to define crimes and the punishment therefor, and this is done by statute."[10]

In *Ex parte Leslie*, the Texas Court of Criminal Appeals invalidated a statute empowering the livestock commission to create a penal offense for failing to dip cattle for fever ticks, holding that the law failed to reasonably

---

[8] *See Ex parte Humphrey*, 92 Tex. Crim. 501, 244 S.W. 822, 824 (1922).

[9] *See* TEX. WATER CODE ANN. §§ 7.177(b), 7.187(1)(B), (2)(C) (Vernon 2000).

[10] *Dendy v. Wilson*, 179 S.W.2d 269, 273 (Tex. 1944).

guide the commissioner in defining the elements of the offense.[11]

Because the legislature has delegated to the TCEQ—a commission created by the executive branch—the authority to define the elements of a crime that carries a penalty of up to 180 days' confinement, I would hold, as did the trial court, that this is an improper delegation of authority granted only to the legislature by our Constitution and affirm the trial court's judgment.  Because the majority does not, I respectfully dissent.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: May 1, 2008

---

[11] *Ex parte Leslie*, 87 Tex. Crim. 476, 223 S.W. 227, 227, 230 (1920).

4