

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

---

**NO. 2-08-116-CR**

---

MAURICE FELTON LAWSON                                    APPELLANT

V.

THE STATE OF TEXAS                                            STATE

------------

FROM COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

------------

## OPINION

------------

### I.  Introduction

In three points, Appellant Maurice Felton Lawson appeals his conviction for violation of a permanent injunction under the "gang injunction statute."  We affirm.

### II.  Factual and Procedural Background

On September 18, 2006, the 89th District Court of Wichita County, Texas, issued a temporary injunction under section 125.065 of the civil practice

and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 125.065 (Vernon 2005). The injunction named seventeen members of the street gang Varrio Carnales ("VC"), including Lawson, who had allegedly engaged in criminal activity. The State, through the injunction, sought to prohibit the named defendants from engaging in twenty-nine activities. Subsequently, the trial court entered an order making the injunction permanent.

On or about February 20, 2007, Lawson violated the trial court's order enjoining organized criminal activity by "[a]ssociating, standing, sitting, walking, driving, bicycling, gathering or appearing anywhere in public view" with a VC gang member who was subject to the permanent injunction.[1] Lawson pleaded guilty, and pursuant to a plea bargain agreement with the State, the trial court sentenced him to 300 days' confinement and a $4,000 fine. Lawson now appeals.[2]

### III. Discussion

In his first two points, Lawson claims that penal code section 71.021 is facially unconstitutional; in his third point, he argues that it is unconstitutional as applied to him.

---

[1] *See* Tex. Penal Code Ann. § 71.021 (Vernon 2003).

[2] Lawson's appeal is limited by the rules of appellate procedure and by the trial court's certification of his right to appeal. *See* Tex. R. App. P. 25.2.

2

## A. Standard of Review

We review the constitutionality of a criminal statute de novo, as a question of law. *See Owens v. State*, 19 S.W.3d 480, 483 (Tex. App.—Amarillo 2000, no pet.); *State v. Salinas*, 982 S.W.2d 9, 10–11 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). When confronted with an attack upon the constitutionality of a statute, we presume that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002); *Ex parte Dave*, 220 S.W.3d 154, 156 (Tex. App.—Fort Worth 2007, pet. ref'd), *cert. denied*, 128 S. Ct. 628 (2007). The burden rests upon the individual who challenges the statute to establish its unconstitutionality. *Rodriguez*, 93 S.W.3d at 69; *Dave*, 220 S.W.3d at 156. In the absence of contrary evidence, we will presume that the legislature acted in a constitutionally sound fashion. *Rodriguez*, 93 S.W.3d at 69. The statute must be upheld if a reasonable construction can be ascertained that will render the statute constitutional and carry out the legislative intent. *Shaffer v. State*, 184 S.W.3d 353, 363 (Tex. App.—Fort Worth 2006, pet. ref'd); *see Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979).

**B. Facial and As-Applied Challenges**

There are two types of challenges to the constitutionality of a statute: the statute is unconstitutional as applied to the defendant, or the statute is unconstitutional on its face. *Fluellen v. State*, 104 S.W.3d 152, 167 (Tex. App.—Texarkana 2003, no pet.). The constitutionality of a statute as applied must be raised in the trial court in order to preserve error. *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995). However, a defendant may raise a constitutional challenge to the facial validity of a statute for the first time on appeal. *Garcia v. State*, 887 S.W.2d 846, 861 (Tex. Crim. App. 1994), *cert. denied*, 514 U.S. 1005 (1995).

**1. Facial Constitutionality of Penal Code Section 71.021**

In his first point, Lawson argues that penal code section 71.021 is unconstitutionally vague and overbroad and therefore violates both the United States Constitution and the Texas Constitution. This court recently rejected an argument identical to Lawson's. *See Goyzueta v. State*, 266 S.W.3d 126, 130–37 (Tex. App.—Fort Worth 2008, no pet.). *Goyzueta* involved the same injunction that Lawson now challenges. *Id*. at 129. For the same reasons articulated in our opinion in that case, we reject Lawson's argument and, accordingly, overrule his first point.

4

In Lawson's second point, he argues that section 71.021 is unconstitutional "on its face" because it violates the Nondelegation Doctrine.[3] Specifically, Lawson's chief complaint is that section 71.021 is unconstitutional because it is "plainly apparent" that it does not belong to any of the six classifications listed by the Texas Supreme Court in *Housing Authority of City of Dallas v. Higganbotham*, 135 Tex. 158, 171–72, 143 S.W.2d 79, 87 (1940).

### a. Nondelegation Doctrine

In *Higganbotham*, the court listed six classifications of delegations of legislative responsibility that do not run afoul of the Nondelegation Doctrine enunciated in article II, section 1 of our state's constitution.[4]   135 Tex. at

---

[3] On appeal, Lawson argues that section 71.021 is unconstitutional based on the Nondelegation Doctrine; however, in his pretrial motions, Lawson argued unconstitutionality based on the Separation of Powers Doctrine. Because Lawson may raise a constitutional challenge to the facial validity of a statute for the first time on appeal, we will address his second point. *Garcia*, 887 S.W.2d at 861.

[4] Article II, section 1 of the Texas Constitution of 1876 states:

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit:  Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

171–72, 143 S.W.2d at 87. The one of primary concern to us is the first, which states that nondelegation is not violated "[w]here the legislature because of the nature of the subject of legislation cannot practically and efficiently exercise such powers . . . ." *Id.*, 143 S.W.2d at 87 (internal citations omitted). While "[t]he power to pass laws rests with the Legislature, and that power cannot be delegated to some commission or other tribunal," *Brown v. Humble Oil & Refining Co.*, 126 Tex. 296, 306, 83 S.W.2d 935, 941 (1935), the legislature can delegate power to a coordinate branch, so long as the legislature has declared a policy and fixed a primary standard for its implementation. *Ex parte Granviel*, 561 S.W.2d 503, 514 (Tex. Crim. App. 1978) (citing *Margolin v. State*, 151 Tex. Crim. 132, 205 S.W.2d 775 (1947); *Williams v. State*, 146 Tex. Crim. 430, 176 S.W.2d 177 (1943)). That primary standard must be "capable of reasonable application." *Granviel*, 561 S.W.2d at 514.

### b. Statutory Provisions

Section 71.021 of the penal code states that a person commits an offense if the person knowingly violates a temporary or permanent order issued under section 125.065(a) or (b) of the civil practice and remedies code, and that this offense is a Class A misdemeanor. *See* Tex. Penal Code

---

Tex. Const. art. II, § 1.

Ann. § 71.021. Section 125.065 of the civil practice and remedies code outlines when a trial court can enter a temporary or permanent injunction against a criminal street gang member. *See* Tex. Civ. Prac. & Rem. Code Ann. § 125.065. It provides:

> (a) If the court finds that a combination or criminal street gang constitutes a public nuisance, the court may enter an order:
>
>> (1) enjoining a defendant in the suit from engaging in the gang activities of the combination or gang; and
>>
>> (2) imposing other reasonable requirements to prevent the combination or gang from engaging in future gang activities.
>
> (b) If the court finds that a place is habitually used in a manner that constitutes a public nuisance, the court may include in its order reasonable requirements to prevent the use of the place for gang activity.

*Id*. The Texas Legislature enacted this statute in 1993, after establishing that "gang activity" constitutes a public nuisance, to enable local governments to obtain civil injunctions against gang members. *See* Tex. Civ. Prac. & Rem. Code Ann. § 125.061 (Vernon Supp. 2008), § 125.062–.065 (Vernon 2005). The overall purpose and policy behind the statute is to promote a peaceful society by enjoining gang members from engaging in a variety of legal and illegal activites within a specified area, often called the "safety zone."

Section 125.065 provides a guide as to when a trial court can enter a temporary or permanent order against a criminal street gang member. *See* Tex.

7

Civ. Prac. & Rem. Code Ann. § 125.065. In conjunction with section 125.065, section 71.021 of the penal code describes the offense of violation of a court order enjoining organized criminal activity. *See* Tex. Penal Code Ann. § 71.021. In other words, the legislature has authorized the trial courts to impose reasonable requirements to prevent a gang member from engaging in future gang activities while retaining the authority to impose a class A misdemeanor for violating a court-imposed restriction. *Goyzueta*, 266 S.W.3d at 136.

### c. Analysis

While Lawson complains that section 71.021 violates the nondelegation doctrine, he fails to articulate an argument in support of his claim other than his statements that "[p]enal laws by their nature are most appropriately exercised without Legislative delegation," and "[i]n those instances when delegation is necessary, power is ordinarily assigned if technical or scientific concerns make enforcement impractical or inefficient for the legislature." Lawson further argues that the legislature enacted a law that proscribed no conduct at all but instead delegated the power to define the misconduct to district judges through "anti-gang injunction" orders.

We disagree on both accounts. We hold that it is neither practical nor efficient for the Texas Legislature, which meets every other year for a few months, to determine the exact requirements necessary in order to prevent gang members from engaging in future gang activities. *Higganbotham*, 135 Tex. at 171–72, 143 S.W.2d at 87; *see also State v. Rhine*, 255 S.W.3d 745, 752 (Tex. App.—Fort Worth 2008, pet. granted) (holding that it is neither practical nor efficient for the Texas Legislature to determine exactly what materials should be banned from outdoor burning, and under what circumstances, including the wind speed, time of day, and other minutiae related to curbing the legislatively-defined "air pollution"). Therefore, section

9

71.021 falls within the first classification listed in *Higginbotham*. *See Higginbotham*, 135 Tex. at 171–72, 143 S.W.2d at 87.

However, even if section 71.021 failed to fall within one of the six classifications, the listed classifications in *Higginbotham* are merely indicative of the supreme court's prior decisions on the subject of nondelegation and therefore are not exclusive. *Id.*, 143 S.W.2d at 87. Here, the legislature has merely asked the trial courts to impose reasonable requirements while the legislature retains the power to make the law by determining that a violation of the requirements, even those judicially imposed, is an offense. *See Touby v. United States*, 500 U.S. 160, 165, 111 S. Ct. 1752, 1756 (1991) ("Congress does not violate the Constitution merely because it legislates in broad terms, leaving a certain degree of discretion to executive or judicial actors.").[5] Furthermore, the legislature has defined the following key phrases:

> (1) "Criminal street gang" means three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities.

> (2) "Gang activity" [includes:] organized criminal activity[;] terroristic threat[;] coercing, soliciting, or inducing gang

---

[5] Decisions of the United States Supreme Court on the doctrine of separation of powers are instructive in interpreting our own express constitutional provisions. *Trimmier v. Carlton*, 116 Tex. 572, 296 S.W. 1070 (1927).

membership; criminal trespass[;] disorderly conduct[;] criminal mischief that causes a pecuniary loss of $500 or more; a graffiti offense [that:] (i) causes a pecuniary loss of $500 or more; or (ii) occurs at a school, an institution of higher education, a place of worship or human cemetery, a public monument, or a community center that provides medical, social, or educational programs[;] a weapons offense in violation of Chapter 46, Penal Code[;] or unlawful possession of a substance or other item in violation of Chapter 481, Health and Safety Code.

(3) "Public nuisance" [is a] combination or criminal street gang that continuously or regularly associates in gang activities.

Tex. Penal Code Ann. § 71.01(d) (Vernon 2003); *see* Tex. Civ. Prac. & Rem. Code Ann. § 125.061 (using various provisions of the penal code to define these types of activity); *see also id*. § 125.062 (using the penal code definition for public nuisance as pertaining to gang activities).

Therefore, we hold that these limitations and guidelines, in addition to the policy reasons behind the enactment of section 71.021, compel us to the conclusion that section 71.021 does not violate the Nondelegation Doctrine and therefore, is not unconstitutional "on its face." *See Granviel*, 561 S.W.2d at 514 (holding that the legislature can delegate power to a coordinate branch, so long as the legislature has declared a policy and fixed a primary standard for its implementation). Accordingly, we overrule Lawson's second point.

## 2. As-Applied Challenge

In his final point, Lawson challenges the constitutionality of section 71.021 "as applied" to him, claiming that because the State failed to serve process on his biological mother, Janessa Lawson, in the civil injunction proceeding, the trial court lacked personal jurisdiction over him to issue the injunction. Therefore, he argues, because the anti-gang injunction was void as to him, he could not be prosecuted under section 71.021 for violation of the injunction.

For this court to review an attack on the constitutionality of a statute "as applied," Lawson must first have raised the issue before trial by written motion and have obtained a ruling on the motion. *Curry*, 910 S.W.2d at 496. In Lawson's second motion to dismiss, he asserts the unconstitutionality of section 71.021 in its "application"; however, he does not reference failure of service of process as the reason. Instead, he claims that section 71.021 is unconstitutional "as applied" because it violates the Separation of Powers Doctrine. Based on the record before us, then, Lawson has failed to preserve his "as applied" argument and has forfeited this point because his complaint on appeal must comport with the one that he made in the court below.[6] *See*

---

[6] Furthermore, Lawson's guardian or custodian, Carlas Freeman, received notice of the hearing and appeared. At Lawson's bond reduction hearing, Freeman testified that she was Lawson's mother, although not his biological mother, and that she had watched after him for eighteen

12

*Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); *Bell v. State*, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 827 (1997); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). Therefore, we overrule Lawson's third point.

## IV. Conclusion

Having overruled all of Lawson's points, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL: LIVINGSTON and MCCOY, JJ.; and WILLIAM BRIGHAM, J. (Senior Justice, Retired, Sitting by Assignment).

---

years—Lawson's entire life. Lawson acknowledged Freeman as his "guardian and next friend" in pleadings filed on his behalf. Freeman appeared at the hearing, even though Janessa's name instead of Freeman's appeared on the citation, waiving any defect in notice. *See* Tex. Fam. Code Ann. § 53.06(e) (Vernon 2008) (allowing anyone but the juvenile to waive service); *K.M.P. v. State*, 701 S.W.2d 939, 941 (Tex. App.—Fort Worth 1986, no writ) (holding that any right of juvenile's father to be served with copy of summons and a petition was waived by father's appearance and voluntary submission to jurisdiction of court). On these facts, any deficiencies in the service of process did not adversely affect Lawson's interests. *See, e.g.*, Tex. Fam. Code Ann. § 53.06(a) (stating that, in juvenile court, issuance of summons shall be directed to the child named in the petition and the child's parent, guardian, *or* custodian); *In re V.C.H.*, 605 S.W.2d 643, 647 (Tex. Civ. App.—Houston [1st Dist.] 1980, no pet.) (holding that failure of juvenile court to serve child's mother with notice did not invalidate transfer order where child's foster father was his custodian and foster father was served and appeared at the hearing).

13

PUBLISH

DELIVERED: February 5, 2009